## No. 79SA38

**Southeastern Colorado Water Conservancy District; Northern Colorado Water Conservancy District; Southwestern Colorado Water Conservation District v. John Huston; Alan Leaffer; Wallace Yaffe, d/b/a various John Doe and Richard Roe joint ventures; Nedlog Technological Group; Colorado Pacific Energy; Colorado Pacific Aztec; and Bob Johnston, Jr.**

(593 P.2d 1347)

Decided April 16, 1979. Rehearing denied April 30, 1979. Rehearing denied May 7, 1979.

Fairfield and Woods, Charles J. Beise, Howard Holme, for petitioner Southeastern Colorado Water Conservancy District.

Davis, Graham & Stubbs, John M. Sayre, for petitioner Northern Colorado Water Conservancy District.

Maynes, Bradford & Duncan, for petitioner Southwestern Colorado Water Conservation District.

J. D. MacFarlane, Attorney General, Hubert A. Farbes, Jr., First Assistant, Vicki J. Fowler, Assistant, Jack Wesoky, Assistant, for co-petitioner C. J. Kuiper, State Engineer.

Yegge, Hall & Evans, Michael D. White, John D. Phillips, Harvey W. Curtis, Charles B. White, for respondents John H. Huston, Alan Leaffer and Wallace Yaffe.

Holme, Roberts & Owen, Kenneth J. Burke, Marilyn G. Alkire, for respondent Nedlog Technology Group.

Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, for respondents Colorado Pacific Energy and Colorado Pacific Aztec.

Saunders, Snyder, Ross & Dickson, P.C., W. B. Tourtillot, Jr. for respondent Bob Johnston, Jr.

Fischer, Brown, Huddleson & Gunn, Ward H. Fischer, Steven B. Ray, for amici curiae Jackson County Water Conservancy District, Cache La Poudre Water Users Association and City of Fort Collins, Colorado.

Steinmark & Lawrence, Kim R. Lawrence, for amicus curiae Central Colorado Water Conservancy District.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This is an original proceeding in which we have been requested to consolidate a number of water cases in order that there may be a determination of common questions of law. These cases arise from applications for the adjudication of rights in non-tributary underground waters apparently not located within any designated ground water basin.[1] We are asked to comply with this request under our supervisory powers granted by *Colo. Const.* Art. VI, § 2. We issued a rule to show cause and now make the rule absolute.

On January 24, 1979 the petition commencing these proceedings was filed by Southeastern Colorado Water Conservancy District, Northern Colorado Water Conservancy District and Southwestern Colorado Water Conservation District. Shortly thereafter the State Engineer asked for, and was granted, permission to join in the prayer for relief contained in the petition.

The respondents are referred to as follows:

John Huston, Allan Leaffer and Wallace Yaffe, d/b/a various John Doe and Richard Roe Joint Venturers — the "Joint Venturers";

Nedlog Technological Group — "Nedlog";

Colorado Pacific Energy and Colorado Pacific Aztec — "Colorado Pacific"; and

Bob Johnston, Jr. — "Johnston".

---

[1] *See* sections 37-90-101 *et seq.*, C.R.S. 1973.

On December 28 and 29, 1978 the Joint Venturers, Nedlog and Johnston filed separate applications for non-tributary underground water rights. In the documents before us we have observed no connection between these three claimants. At about the same time Colorado Pacific filed for 148 wells. Colorado Pacific states that 92 of these were from non-tributary sources and that "[n]o such allegation was made" as to the other 56. Colorado Pacific disavows any connection with the other respondents.

It appears that the respondents have filed over 100 cases[2] involving claims for thousands of wells and over 20 million acre feet of water in underground reservoirs.

The common questions of law suggested in the petition are:

1. Does the water judge have jurisdiction over these claims?
2. Can non-tributary waters outside the boundaries of designated water basin be appropriated by non-owners of the surface?
3. Are such waters subject to appropriation under the Colorado Constitution?
4. Can such applications be filed without first applying for permits from the State Engineer?
5. Can appropriations be made for speculative purposes in uses by persons other than the claimants?

The prayer of the petition is "that this Court designate one water judge of one division to hear and determine all common questions of law, staying all proceedings in all other cases in all other divisions until final determination of said legal questions."

## I.

We do not submit the questions in precisely the manner suggested by the petitioners nor grant all of the relief requested, as we set forth below.

The chief justice of this court is appointing the same district judge as an additional water judge in each of the seven water divisions of the state. For convenience, he is here called the special water judge. Our ruling in capsulized form, to be expanded later in this opinion, is that the applications of the respondents for decrees awarding them rights to non-tributary waters are assigned to the special water judge in order that there may be a determination of the threshold question (Q1) of whether non-tributary waters in Colorado are subject to appropriation; and, in the event that the answer to this question is in the affirmative, for the determination of the following additional questions of law:

Q2.   By what authority can such waters be appropriated?

Q3.   Can non-tributary waters outside the boundaries of designated ground water basins be appropriated by persons having no property

---

[2] Joint Venturers set forth in one of their briefs that 122 "applications" have been filed in the matters designated by the petitioners. "Applications" as here used, we believe means the same as "cases."

interest in the surface?

Q4. Can non-tributary waters outside the boundaries of designated ground water basins be appropriated for use by persons other than the claimant or those whom the claimant is authorized to represent?

Q5. Can applications for non-tributary waters outside the boundaries of designated ground water basins be filed (a) without first obtaining permits from the State Engineer and, if so, (b) without first applying for such permits?

We are not here staying proceedings in cases other than those involved in the applications of the respondents.

## II.

We are not directing that in the consolidated proceeding there be a determination of the question as to whether the water judge has jurisdiction over these claims. In *Perdue v. Ft. Lyon Canal,* 184 Colo. 219, 519 P.2d 954 (1974), we called attention to the provision of section 37-92-203(1), C.R.S. 1973[3] to the effect that the water judge has been given jurisdiction with respect to "water matters." We there stated that non-tributary water, which has not been designated as ground water, is included within the term "water matters." In that opinion we called attention to the fact that a water judge is a district judge and stated that, "When the water judge wears two hats, it would approach an absurdity to say that he must rule in two different actions to bring about the [ultimate] result . . . ." Whatever the rights of the respondents may or may not be, we think that it has already been determined that the water judge, either as a water judge or as a district judge, has jurisdiction to determine any questions which may properly be raised concerning the respondents' applications. *See Oliver v. District Court,* 190 Colo. 524, 549 P.2d 770 (1976).

## III.

The respondents have made a number of objections. These may be classified as follows:

A. Jurisdictional objections.

1. This court's supervisory power provides no basis for its exercise of original jurisdiction.

2. The water courts have exclusive jurisdiction of water matters within their divisions.

3. Only trial courts can order consolidation, and no motions for consolidations have been filed with them.

4. This court cannot change venue.

5. Cases pending in different divisions may not be consolidated.

---

[3] There referred to as 1969 Perm. Supp., C.R.S. 1963, 148-21-10(1).

B. Objections as to parties.

1. The petitioners have no standing to bring this proceeding and are not parties to many of the cases pending in the water courts.

2. Persons in interest are not parties here and, therefore, consolidation at this time is premature.

3. The petitioners have failed to designate the particular application to which they have filed statements of opposition.

4. There is no identity of interest among the respondents.

5. The water judges have not been joined in this proceeding.

C. Objections as to subject matters.

1. Common questions of law are not involved in this proceeding.

2. The "common questions of law" have already been resolved.

3. The petition does not adequately describe the matters sought to be consolidated.

4. Speculative purposes involve differing facts in different cases.

D. To make the rule absolute would constitute a denial of due process of law and a violation of equal protection under the law.

E. Making the rule absolute would result in unnecessary delay.

### III. A-1

The supervisory powers granted to this court by the constitution are:

"The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state, and shall have a general superintending control over all inferior courts, under such regulations and limitations as may be prescribed by law." *Colo. Const.* Art. VI, § 2(1).

One of the purposes of the "superintending control" provision is "to insure the harmonious working of our judicial system." *People v. Richmond,* 16 Colo. 274, 26 P. 929 (1891); *In re Assignment of Huff,* 352 Mich. 402, 91 N.W.2d 613 (1958).

Joint Venturers have filed applications in each of the seven water divisions of our state. It appears that, absent consolidation, seven different water judges will have before them most if not all of the questions of law above mentioned under Article I. These are difficult questions. Beyond the waste of judicial time, there is the very present possibility that the seven judges might come to different conclusions. These questions involve matters of great public importance. This importance is not only to the many persons whose rights may be involved, but to the General Assembly as it reviews the present state of constitutional and statutory law relating to water rights and seeks solutions to legal problems which are capable of solution by it.

We have been told that a rule such as we are here making absolute should be issued only with great care and under extraordinary circumstances. Assuming *arguendo* that this is a proper statement, mak-

ing the rule absolute meets those conditions. We are thoroughly convinced that our action is necessary to insure the harmonious working of our judicial system. The constitutional supervisory power granted to this court is a proper basis for making the rule absolute.

### III. A-2

■ It is argued that there is no authority for the proposal "that a single water judge be conferred extraordinary jurisdiction over applications for water rights filed by various applicants in different water divisions." This argument is predicated upon the following statutory provisions:

"There is established in each water division the position of water judge of the district courts of all counties situated entirely or partly within the division. Said district courts collectively acting through the water judge have exclusive jurisdiction of water matters within the division, and no judge other than the one designated as a water judge shall act with respect to water matters in that division . . . ." Section 37-92-203(1), C.R.S. 1973.

We are complying with the statutes. Subsection (2) of section 203 provides:

"The water judge for a particular division shall be selected from among the judges of the district courts of the counties situated entirely or partly within the division; except that the chief justice may make temporary assignments of other judges."

As mentioned, contemporaneously with the announcement of this opinion, the chief justice is temporarily assigning an additional water judge to each of the seven water divisions, referred to here as the special water judge. He will act as the water judge of the cases consolidated in this proceeding, sitting in the county or counties which he shall designate. Section 37-92-203(3), C.R.S. 1973.

This procedure disposes of the argument that we are taking original jurisdiction away from the water judges. Later, we may be reviewing the decisions of the special water judge on these questions of law, but we are not exercising original jurisdiction to answer them in the first instance.

### III. A-3

■ It is argued that only the water courts can order consolidation. This argument is predicated upon C.R.C.P. 42(a) which reads:

"When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

A reading of C.R.C.P. 42(a) answers the argument. These provisions relate to actions pending before the same trial court.

### III. A-4

■ In support of the argument that this court cannot change venue, the Joint Venturers cite section 37-92-203 and 304(4), C.R.S. 1973 and C.R.C.P. 98. We have already addressed ourselves to the argument under section 203. Rule 98 is the venue rule. We are not changing venue. The Joint Venturers quote the portion of section 304(4) reading:

"If an applicant, a person who has filed a statement of opposition, or a protestant requests, the hearing shall be conducted by the water judge in the district court of the county in which is located the point of diversion of the water right or conditional water right involved."

Counsel then state in their brief:

"In order to insure that there be no uncertainty as to this point, Respondents hereby state that they will assert their statutory right, pursuant to § 37-92-304(4), that all hearings concerning any conditional water rights, in which they have an interest, be conducted in the district courts of the counties in which are located the points of diversion of the water rights involved."

This challenge consists of a statement of intent to make an assertion in the water court. If counsel proceed as they state, then they should do so in order that the matter may be heard by the special water judge.

### III. A-5

We have already made disposition of most of the objections raised under III. A-5. Remaining portions of such objections are without merit. We do mention a partial paradox as to the objection that cases pending in different divisions may not be consolidated. Nedlog moved in Water Division Nos. 5 and 6 that its applications filed in those divisions be consolidated on the ground that they involve common questions of law and fact. The motion states:

"Consolidation of these Applications as sought herein will promote the just, speedy and inexpensive determination of the uses presented to avoid unnecessary costs and delay and inconsistent determinations, and promote the policies and purposes of C.R.C.P. Rules 1(a) and 42(a)."

In fairness to Nedlog, it should be stated that it was not among the respondents who made the objection that cases pending in different divisions could not be consolidated.

### III. B

We now consider the respondents' objections as to parties.

■ All respondents have contended that the petitioners do not have standing.

The petitioners have made the following allegations: that the petitioner Southeastern Colorado Water Conservancy District has filed objections to all of the claims of the Joint Venturers in Water Divisions 2 and 5, to all of the claims in Nedlog in Division 5, and to all of the claims of Johnston in Division 2; that the petitioner Southwestern Colorado Water

Conservation District has filed or is filing objections to all of the Colorado Pacific claims in Division 7; and that the petitioner Northern Colorado Conservancy District is filing objections to the respondents' claims in Divisions 1 and 5. When the State Engineer entered this proceeding, he stated that he is filing statements of opposition to all of the applications for water rights involved in this proceeding.

Under the powers granted to the petitioners by sections 37-45-102 and 118 and sections 37-47-101 and 107, C.R.S. 1973, and in light of the discussion concerning the State Engineer's authority in *Wadsworth v. Kuiper,* 193 Colo. 95, 562 P.2d 1114 (1977), we have no doubt as to the standing of either of the petitioners or the State Engineer to request the relief here asked. We are only concerned here with the question of whether petitioners have standing to obtain consolidation for the purpose of determining certain common questions of law. The many "standing" cases cited by petitioners are not applicable to this particular issue. We hold that there is standing here.

We do not perceive the alleged prematurity of this proceeding, and we find the objections as to parties in this respect without merit.

### III. C-1

Joint Venturers and Nedlog take the position that for an issue to constitute a common question of law it must be common to every respondent and every application for water right. The only authority cited for this assertion is *Willy v. Atchison T. & S. F. Ry. Co.,* 115 Colo. 306, 172 P.2d 958 (1946). In contrast, we are considering a common question of law to be one common to more than one of the respondents. Johnston vigorously insists that he should not be included in this consolidation because he "is seeking a conditional decree on ground water rights to protect and preserve those rights underlying *his own land.*" In its objection to Johnston's application, the Southeastern Colorado Water Conservancy District has alleged: that the water involved is not subject to appropriation; that appropriations cannot be initiated for speculative purposes; and that no more waters can be appropriated from deep wells than are required for beneficial use on lands overlying the same. Johnston's application claims 71 cubic feet per second of time of water to serve "agricultural, residential, commercial, and/or industrial development of the property described . . . and such other land as may be served directly or served through exchange or augmentation," and asks that the water be determined to be non-tributary. The Johnston application for 53 wells involves questions common to the other petitioners.

### III. C-2

The Joint Venturers state in one of their briefs: "The 'common questions of law' suggested by the petition are already settled by constitutional or statutory provision or by case law." The question as to the correctness of this statement goes to the heart of this proceeding.

The first of the common questions is whether non-tributary water in Colorado is subject to appropriation. It is to be noted that the question we pose is broader than that suggested by the petitioners, namely, are such waters subject to appropriation under the Colorado Constitution?

Do the following constitutional provisions include non-tributary water:

"The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided." *Colo. Const.* Art. XVI, § 5.

"The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied . . . ." *Colo. Const.* Art. XVI, § 6.

"All persons and corporations shall have the right-of-way across public, private and corporate lands for the construction of ditches, canals and flumes for the purpose of conveying water for domestic purposes, for the irrigation of agricultural lands, and for mining and manufacturing purposes, and for drainage, upon payment of just compensation." *Colo. Const.* Art. XVI, § 7.

If these constitutional provisions do not apply to non-tributary waters, then as to such waters which are not "designated ground water" what is the effect of the Water Right Determination and Administration Act of 1969 (section 37-92-101 *et seq.,* C.R.S. 1973) and the Colorado Ground Water Management Act (section 37-90-101 *et seq.,* C.R.S. 1973)?

We have reread the "developed water" cases, such as *Leadville Co. v. Sweet,* 91 Colo. 536, 17 P.2d 303 (1932); *Comrie v. Sweet,* 75 Colo. 199, 225 P. 214 (1924); *Ripley v. Park Center Co.,* 40 Colo. 129, 90 P. 75 (1907); and *Platte Valley Co. v. Buckers Co.,* 25 Colo. 77, 53 P. 334 (1898). We have questions as to the applicability of these cases to the non-tributary water problems posed here. We are not unmindful of *Sweetwater Co. v. Schubert,* 188 Colo. 379, 535 P.2d 215 (1975) and *Pikes Peak v. Kuiper,* 169 Colo. 309, 455 P.2d 882 (1969).

Without pursuing the Joint Venturers' assertion further, we simply state that, from the fact that we ask these questions as to the instant applications, it can be deduced that we are not satisfied that they are answered by previously announced Colorado law.

### III. C-3

We do not agree with the contention that the petition herein does not adequately describe the matters involved.

### III. C-4

Most of the respondents have presented the argument — rather convincingly — that any ruling as to the matter of speculative purposes depends upon the particular facts of the individual case. We agree that to apply a general rule concerning this subject does require consideration of the facts of the application before the court. That, however, does not

prevent the special water judge, who hears the matters involved in this proceeding, from applying the general rules involved to the facts of the applications of the respondents.

This court has held that a claim to surface water rights cannot be predicated solely upon speculative purposes. *Denver v. Northern Colorado Water Conservancy District,* 130 Colo. 375, 276 P.2d 992 (1954); *Combs v. Agricultural Ditch Company,* 17 Colo. 146, 28 P. 966 (1892). This court shortly will announce its opinion in *Colorado River Water Conservation District v. Vidler Tunnel Co.,* 197 Colo. 413, 594 P.2d 566 (1979) which deals with the question. The special water judge will have the guidance of those cases in addressing the related question of whether non-tributary waters outside the boundaries of a designated ground water basin can be appropriated except for use by the respondents or others whom the respondents are authorized to represent.

### III. D

The Joint Venturers and Johnston argue that making the rule absolute will constitute a denial of due process of law and a violation of equal protection under the law. The only cases cited for this proposition are *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975); *Woodson v. Ingram,* 173 Colo. 65, 477 P.2d 455 (1970); *Dunbar v. Hoffman,* 171 Colo. 481, 468 P.2d 742 (1970); and *Fellhauer v. People,* 167 Colo. 320, 447 P.2d 986 (1968). We are unable to perceive the applicability of the cited cases in the instant proceeding. The statements in support of the argument are in large part the same as the objections already considered or are without merit.

### III. E

Some of the respondents express the opinion that our action here will result in great delay and consequent prejudice. One of the principal reasons for our action here is that our prognosis is otherwise. We appear to be confronted with one of the great emergencies in the history of Colorado water law. The questions of law here involved are fundamental. The determination of these questions in an orderly and studied fashion should take place with all feasible speed. Having a single water judge, who can consider all aspects of all claims involved, decide these questions subject to the right of appellate review, instead of having them decided piecemeal by seven different judges on differing time schedules with many possible appeals, will achieve the result all seek — speedier determination.

### IV.

The special water judge now being appointed by the chief justice shall be an additional judge in and assigned to each of the seven divisions. This special water judge hereby has assigned to him all matters connected with the pending applications of the respondents which are the subject of this proceeding and which are on file with any of the water clerks of the state. These applications include, without limitation by reason of enumeration

thereof, the following:

Applications by any of the Joint Venturers under trade names such as Dexter Enterprises and Bluepond Associates, examples of which are the applications in Case No. W-4810 and W-4829 in Water Division No. 2.

Applications of Nedlog Technology Group, an example of which is the application in Case No. W-4004 in Water Division No. 5, captioned for filing in Water Division Nos. 5 and 6.

All applications of Colorado Pacific Aztec and Colorado Pacific Energy, examples of which are cases numbered W-1905-78 and W-1906-78 filed in Water Division No. 7.

All applications of Bob Johnston, Jr., an example of which is the application filed in Case No. W-4805 in Water Division No. 2.

The special water judge is directed, with the cooperation of the water clerks of the state and of the other water judges, without delay to compile and publish a list of the applications which he is to consider under the rule of this opinion. Either on his own motion or that of any interested person, the special water judge may add other applications, or delete applications, from the list. He may certify to this court in this proceeding any questions in connection with the compilation and publication of such list or amendments thereto, and this court expressly retains jurisdiction of this proceeding for that purpose.

If the special water judge finds that any claim made by any respondent is solely for tributary water to be adjudicated as a part of the adjudication of decreed tributary priorities under the Water Right and Administration Act of 1969, and if the special water judge shall find that such transfer will not prejudice any rights, the special water judge may transfer such claim to the other water judge of the division involved for hearing and disposition by the latter.

The special water judge, acting in conjunction with the water clerks and the other water judges, shall do those things necessary to preserve, and to protect the integrity of, the files of all matters with which the special water judge shall be concerned. In the event of a substantial doubt in the mind of the special water judge as to the method of preserving the files and the integrity of the filing, he may address an inquiry concerning the matter to this court in this proceeding. Jurisdiction in this proceeding is reserved to consider and answer any such inquiries.

In the event that the special water judge concludes that in the discharge of his duties there must be clarification of any directions or other statements in this opinion, he may request this court for clarification. We retain jurisdiction in this proceeding to respond to any such request from the special water judge for clarification.

If the special water judge has any substantial question as to the procedures to be followed in carrying out his duties under our rule here issued, he may address to this court a request for direction in this respect.

We retain jurisdiction to act upon any such request.

When the special water judge has decided all common questions of law involved as to any claim, he may certify that fact to this court in this proceeding with the request that any remaining questions involved in the claim be determined by the other water judge of the division. We retain jurisdiction to accept and act upon any such certification and request.

When the special water judge has decided any particular common question of law submitted hereby, he may enter an order in the nature of that for which provision is made in C.R.C.P. 54(b) in order that there may be review of the decision by this court.

We do not intend in this proceeding to reserve jurisdiction to assign to the special water judge any cases in addition to those now filed by the respondents for non-tributary water. Neither do we reserve jurisdiction here to stay the processing and determination of any other applications. The water judges, other than the special water judge, may in their discretion conclude to hold other applications in abeyance awaiting the outcome of determination of the common questions of law. In this connection, they must consider factors which are not before us. We, therefore, decline to issue stays as to any other proceedings.

Rule made absolute.

IN THE SUPREME COURT
OF THE STATE OF COLORADO

ASSIGNMENT OF AN ADDITIONAL
WATER JUDGE (SECTION 31-92-203          ORDER
(1), C.R.S. 1973)

As a matter complementary to the opinion in original proceeding No. 79SA38 today announced by this court,

IT IS HEREBY ORDERED that Honorable M. O. Shivers, Jr., Chief Judge of the Eighteenth Judicial District, be and he is hereby appointed and assigned temporarily as an additional water judge in each of the seven water divisions of this state, namely, divisions numbered 1, 2, 3, 4, 5, 6 and 7.

Done at Denver, Colorado this 16th day of April, 1979.

/s/Paul V. Hodges
    Chief Justice
    Colorado Supreme Court